IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LAVEEN MEADOWS HOMEOWNERS ASSOCIATION, *Plaintiff/Appellee,*

*v.*

CARLOS MEJIA, *Defendant/Appellant.*

No. 1 CA-CV 18-0276

FILED 5-5-2020

---

Appeal from the Superior Court in Maricopa County
No. CV2016-094391
The Honorable Margaret E. Benny, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Maxwell & Morgan, P.C., Mesa
By Chad M. Gallacher
*Counsel for Plaintiff/Appellee*

Dessaules Law Group, Phoenix
By Jonathan A. Dessaules, Jacob A. Kubert, David E. Wood
*Counsel for Defendant/Appellant*

**OPINION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kenton D. Jones joined. Judge Kent E. Cattani dissented.

**C R U Z**, Judge:

¶1        Appellant Carlos Mejia challenges the superior court's denial of his motion to set aside a default judgment allowing Appellee Laveen Meadows Homeowners Association ("Laveen Meadows") to foreclose on its lien on Mejia's property. We affirm because Mejia's partial payment of the Association's lien did not entitle him to relief under Arizona Rule of Civil Procedure ("Rule") 60(b).

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Laveen Meadows sued Mejia to foreclose on its lien for unpaid assessments and other unpaid amounts. Laveen Meadows alleged "the principal balance due as of 2016 [was] $8,246.48," which included "amounts awarded in an earlier justice court judgment, as well as amounts not previously reduced to judgment, including attorney fees and costs." Mejia did not timely respond to the complaint, and Laveen Meadows moved for and obtained entry of default.

¶3        Laveen Meadows moved for a default judgment against Mejia; eleven days later, Mejia moved to set aside the entry of default and tendered a check for $5,000, which he asserted "cover[ed] all past due assessments and, therefore, eliminate[d] the right to foreclose." The superior court declined to set aside the default and set a damages hearing.

¶4        Following the hearing, the superior court found Laveen Meadows could recover against Mejia for unpaid assessments due over the three years prior to the complaint and that the payment Mejia had made after entry of default eliminated all of those unpaid assessments. Nevertheless, the court entered a judgment of foreclosure and awarded Laveen Meadows $11,190 in attorneys' fees and $1,012.25 in costs, plus interest. While the court determined Mejia's $5,000 payment had eliminated the "principal sum" of unpaid assessments, the court reasoned that because Laveen Meadows "had the grounds to . . . seek foreclosure at the time of the complaint," it was "allow[ed] foreclosure to proceed for

remaining fees & costs." Finally, the court authorized Laveen Meadows to apply to recover future attorneys' fees and costs it incurred in collecting its judgment.

**¶5** Mejia appealed from the default judgment. We dismissed that appeal for lack of jurisdiction. *Kline v. Kline*, 221 Ariz. 564, 568, ¶ 11 (App. 2009). Mejia then moved to set aside the default judgment, largely repeating the arguments in his motion to set aside the entry of default. The superior court denied the motion and awarded Laveen Meadows additional attorneys' fees and costs. Mejia timely appealed those rulings; we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2).

## DISCUSSION

**¶6** "The scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside and does not extend to a review of whether the trial court was substantively correct in entering the judgment from which relief was sought." *Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 311 (1983). Although we generally prefer that cases be resolved on their merits, we review the denial of a motion to set aside a default judgment for an abuse of discretion. *Id.* at 308.

I.      Mejia Was Not Entitled to Relief Under Rule 60(b)(1).

**¶7** To set aside a default judgment under Rule 60(b)(1), the defendant must show (1) excusable neglect that explains the failure to timely defend, (2) a prompt and diligent request for relief from the judgment, and (3) a meritorious defense to the underlying complaint. *See id.* at 309. Neglect is excusable if a reasonably prudent person might have acted in the same manner under the circumstances. *City of Phoenix v. Geyler*, 144 Ariz. 323, 331-32 (1985).

**¶8** Mejia argues his failure to timely answer was excusable because he did not understand the court process "due to his limited English-language skills." But Laveen Meadows presented evidence showing that Mejia came to its counsel's office the day after he was served to discuss the lawsuit, communicated extensively with Spanish-speaking attorneys in Laveen Meadows' counsel's office, and made two proposals to resolve the matter before Laveen Meadows moved for entry of default. In fact, Mejia had retained counsel immediately after he received a copy of the motion for default judgment. Given this evidence, we cannot say the court abused its discretion in denying relief under Subsection (1). *See, e.g.*, *Daou v. Harris*, 139 Ariz. 353, 360 (1984) (finding relief not warranted where

3

defendant "personally knew of the suit, and apparently merely neglected to act accordingly").

II.      Mejia Was Not Entitled to Relief Under Rule 60(b)(2).

**¶9**          Mejia next contends his $5,000 payment constituted "newly discovered evidence" under Rule 60(b)(2).  He did not raise this argument with the superior court; it therefore is waived.  *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109-10, ¶ 17 (App. 2007).  Moreover, his decision to make a partial payment does not constitute newly discovered evidence for purposes of Subsection (2).  *See Ashton v. Sierrita Mining & Ranching*, 21 Ariz. App. 303, 305 (1974) (stating evidence that "was in possession of the party before the judgment was rendered . . . is not newly discovered and does not entitle him to relief" (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2859 (1973)).

III.     Mejia Was Not Entitled to Relief Under Rule 60(b)(4) or (6).

**¶10**          Only errors that undermine jurisdiction render a judgment void for purposes of Subsection (4) of Rule 60(b).  *Ezell v. Quon*, 224 Ariz. 532, 537, ¶ 19 (App. 2010) (citing *Cockerham v. Zikratch*, 127 Ariz. 230, 235 (1980)); *see also Master Fin., Inc. v. Woodburn*, 208 Ariz. 70, 74, ¶ 19 (App. 2004) ("A judgment or order is void if the court lacked jurisdiction over the subject matter, over the person, or over the particular judgment or order entered.").  We review the denial of a Rule 60(b)(4) motion *de novo.  Ezell*, 224 Ariz. at 536, ¶ 15.

**¶11**          Mejia contends the judgment is void because the court lacked jurisdiction to order foreclosure under A.R.S. § 33-1807(A) (2018).  That lengthy subsection provides:

> The association has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due. The association's lien for assessments, for charges for late payment of those assessments, for reasonable collection fees and for reasonable attorney fees and costs incurred with respect to those assessments may be foreclosed in the same manner as a mortgage on real estate but may be foreclosed only if the owner has been delinquent in the payment of monies secured by the lien, excluding reasonable collection fees, reasonable attorney fees and charges for late payment of and costs incurred with respect to those assessments, for a period of one year or in the amount of one thousand two hundred dollars or more, whichever occurs first.   Fees,

4

charges, late charges, monetary penalties and interest charged pursuant to § 33-1803, other than charges for late payment of assessments are not enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment of the assessment becomes due. The association has a lien for fees, charges, late charges, other than charges for late payment of assessments, monetary penalties or interest charged pursuant to § 33-1803 after the entry of a judgment in a civil suit for those fees, charges, late charges, monetary penalties or interest from a court of competent jurisdiction and the recording of that judgment in the office of the county recorder as otherwise provided by law. The association's lien for monies other than for assessments, for charges for late payment of those assessments, for reasonable collection fees and for reasonable attorney fees and costs incurred with respect to those assessments may not be foreclosed and is effective only on conveyance of any interest in the real property.

A.R.S. § 33-1807(A) (2018).

¶12 We review the superior court's interpretation of the statute *de novo*. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "Our primary goal is to give effect to the [L]egislature's intent." *Wilks v. Manobianco*, 237 Ariz. 443, 446, ¶ 8 (2015) (quoting *J.D. v. Hegyi*, 236 Ariz. 39, 40, ¶ 6 (2014)). "A statute's plain language best indicates legislative intent, and when the language is clear, we apply it unless an absurd or unconstitutional result would follow." *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195, ¶ 9 (2016). If a statute is ambiguous on its face, this court must seek to ascertain the meaning intended by the Legislature "from the language used in the statute, aided by the canons and rules of statutory construction." *Greyhound Parks of Ariz., Inc. v. Waitman*, 105 Ariz. 374, 375 (1970).

¶13 We focus on the second sentence of the provision quoted above. Mejia frames the issue as follows:

The availability of the remedy of foreclosure turns on what the Legislature meant by "may be foreclosed only if the owner has been delinquent." Specifically, whether it refers to the commencement of a civil action seeking judicial foreclosure or issuance of a judgment of foreclosure.

(quoting A.R.S. § 33-1807(A)). He argues for the latter, contending the court should not have determined whether the statutory prerequisites were met until it was ready to enter judgment, by which time his $5,000 payment had "eliminated any conceivable amount that might remain owing for assessments." Laveen Meadows, on the other hand, contends "the two triggering events (i.e., $1,200.00 in unpaid assessments or one year delinquent) are threshold events that remove the bars to foreclosure of the Association's lien as soon as either is once satisfied."

¶14 The plain language of the statute supports Laveen Meadows' interpretation, as it states that a lien "may be foreclosed" once an owner is either delinquent for one year or for $1,200 in unpaid assessments, "whichever occurs first." A.R.S. § 33-1807(A). It would not matter which of these events occurred first if the court could not consider either until it is ready to enter judgment. That is so because prior to entering judgment, the court would need to determine that the owner still owed at least $1,200 in unpaid assessments. Additionally, under Mejia's interpretation, associations could sue to foreclose against homeowners who owe less than $1,200 in unpaid assessments or are delinquent for less than a year on the assumption that one or both will occur before judgment is entered. His interpretation thus would not further the legislative purpose he argues, namely, "to restrict the ability to foreclose." In addition, while A.R.S. § 33-1807(F)[1] makes it clear that the passage of time extinguishes an unpaid lien, the statute does not similarly provide that payment of a portion of the association's lien extinguishes the entire lien. If the Legislature intended for a partial payment to extinguish the association's entire lien, as the dissent suggests we should read the statute, *infra* ¶ 30, it would have explicitly said so.

¶15 We find *Huntington Continental Townhouse Ass'n v. Miner*, 179 Cal. Rptr. 3d 47 (Ct. App. 2014), upon which Mejia and the dissent rely, *infra* ¶ 32, unpersuasive. There, the court held under California law that an association could not refuse a partial payment and proceed with foreclosure when the payment would have reduced the amount of unpaid assessments below the statutory threshold for foreclosure. *Id.* at 57-58. The court's ruling was consistent with the plain language of California Civil Code § 5720, which provides that an association "may not collect . . . through judicial or nonjudicial foreclosure" debts that are either less than $1,800 or

---

[1]    "A lien for an unpaid assessment is extinguished *unless proceedings to enforce the lien are instituted* within six years after the full amount of the assessment becomes due." (Emphasis added.)

fewer than twelve months delinquent. Cal. Civ. Code § 5720(b), (c)(1). In contrast, Arizona's statute, A.R.S. § 33-1807(A), allows an association to sue to foreclose once the lien either exceeds $1,200 in unpaid assessments or is delinquent for one year; *it does not expressly eliminate the foreclosure remedy* if an owner makes a payment to reduce or eliminate the unpaid assessment balance. A.R.S. § 33-1807(A). Indeed, the lien created by the statute expressly includes not only assessments but "charges for late payment of those assessments," "reasonable collection fees," and "reasonable attorney fees and costs incurred with respect to those assessments." *Id.*

**¶16**        For these reasons, we affirm the court's ruling declining to set aside the default judgment as void pursuant to Rule 60(b)(4). We also conclude the court did not err in denying Rule 60(b)(6) relief on these same grounds.[2] *See Hilgeman v. Am. Mortg. Sec., Inc.*, 196 Ariz. 215, 220, ¶ 15 (App. 2000) (noting party seeking relief under Subsection (6) must show "a reason for setting aside the judgment other than one of the reasons set forth in the preceding five clauses" (quoting *Davis v. Davis*, 143 Ariz. 54, 57 (1984)).

---

[2]        The Legislature amended A.R.S. § 33-1807(A) after the events of this case to add the following language to the end of its second sentence:

> The association's lien . . . may be foreclosed only if the owner has been delinquent in the payment of monies secured by the lien, excluding reasonable collection fees, reasonable attorney fees and charges for late payment of and costs incurred with respect to those assessments, for a period of one year or in the amount of $1,200 or more, whichever occurs first, *as determined on the date the action is filed*.

2019 Ariz. Sess. Laws Ch. 200, § 2 (1st Reg. Sess.) (S.B. 1531) (emphasis added). While this amendment does not apply to this case, it further confirms the Legislature's intent that courts may grant foreclosure under § 33-1807(A) upon proof that the requisite delinquency existed when the action was filed, even if the owner reduces the amount of the delinquency while the case is pending. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 297 (1964) ("An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act.").

IV.     Mejia's Challenges to Specific Terms of the Default Judgment Fail.

**¶17**     Mejia also contends the default judgment improperly (1) awarded future unaccrued attorneys' fees and costs, (2) authorized the sale of his personal property, and (3) violated his redemption rights.

> A.     Paragraphs 1(c) and 1(d)—Accruing Attorneys' Fees and Costs

**¶18**     Mejia contends paragraphs 1(c) and 1(d) of the judgment, which allow Laveen Meadows to move for "accruing costs" and "accruing fees" "not otherwise addressed herein," constitute improper fee-shifting. Although Mejia argues that any right to post-judgment fees "must be spelled out in a contract," the Laveen Meadows Homeowners Association's Declaration of Covenants, Conditions and Restrictions (the "Declaration") grants such a right:

> Each Owner . . . is deemed to covenant and agree to pay the Assessments levied pursuant to this Declaration with respect to such Owner's Lot, together with: . . . such costs and reasonable attorneys' fees, costs and other litigation fees and costs as may be incurred by the Association in seeking to collect such Assessments.

"Generally, we enforce a contractual attorneys' fees and costs provision according to its terms." *Harle v. Williams*, 246 Ariz. 330, 333, ¶ 10 (App. 2019). The court lacks discretion to refuse to award fees under a contractual provision. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 206, ¶ 8 (App. 2014).

**¶19**     Mejia appears to contend the Declaration term quoted above was merged into the default judgment. But the merger doctrine's primary function is "to bar subsequent actions on the original cause of action." *C & J Travel, Inc. v. Shumway*, 161 Ariz. 33, 36-37 (App. 1989). Laveen Meadows did not incur the post-judgment fees at issue in bringing a second action; it instead incurred those fees opposing Mejia's motions to set aside the entry of default and the default judgment. Both of these motions clearly relate to Laveen Meadows' original foreclosure claim under the Declaration. *See Bennett Blum*, 235 Ariz. at 207, ¶ 10 (concluding that a party could recover fees for opposing a Rule 60(c) motion and a motion to stay because the motions "necessarily were related to the underlying action on the contract"). The court thus did not err in awarding those fees, nor did it err in authorizing Laveen Meadows to apply to recover additional fees and costs it incurred "to resolve the dispute."

¶20　　　　Mejia also cites *Bocchino v. Fountain Shadows Homeowners Ass'n*, 244 Ariz. 323, 326, ¶ 14 (App. 2018), for the proposition that "an association generally may not 'assess . . . directly against a homeowner, attorney fees incurred in a judicial proceeding that have not been awarded by a qualified tribunal.'" (quoting *id.*). There, we held that an association could not unilaterally assess attorneys' fees incurred in obtaining an injunction against harassment because the court that granted the injunction did not award them under A.R.S. § 12-1810(O). *Id.* at 324-26, ¶¶ 1, 13. The judgment in this case does not permit Laveen Meadows to assess unawarded fees or costs; it only allows Laveen Meadows to apply to the court to recover additional fees or costs.

### B.　　Paragraph 6—Foreclosure of Personal Property

¶21　　　　Mejia contends paragraph 6 of the judgment improperly authorizes the foreclosure against personal property contrary to the personal property exemption set forth in A.R.S. §§ 33-1121 to -1133. That exemption, however, does not apply to liens established under § 33-1807. A.R.S. § 33-1807(C). In any event, the judgment only states that any personal property "present at or in the Property at the time of the [foreclosure] sale . . . will be deemed abandoned and sold as part of the Property if not removed prior to the time the purchaser . . . elects to take possession." No foreclosure sale has yet taken place. And this provision does not prohibit Mejia from removing his personal property from the residence. It only provides that, if he fails to do so and such personal property remains at the time of the foreclosure sale, it will be deemed abandoned and sold as part of the foreclosure sale. Paragraph 6 is not improper.

### C.　　Paragraph 9—Redemption

¶22　　　　Mejia contends paragraph 9 of the judgment violates his right of redemption:

> Possession of the Property shall be vested in the purchaser immediately following the Sheriff's Sale as the holder of equitable title and thus entitling the purchaser to pursue occupancy by all legal means, subject only to Defendants' right of redemption pursuant to Arizona law.

But paragraph 7 of the judgment grants Mejia a redemption period of "six . . . months, unless the property has been abandoned, in which event the redemption period shall be 30 days," consistent with A.R.S. § 12-1282(A) and (B). The judgment thus preserves his redemption rights.

V.     Laveen Meadows May Recover Attorneys' Fees and Costs on Appeal.

¶23          Both parties request their attorneys' fees and taxable costs incurred in this appeal.  Pursuant to A.R.S. § 33-1807(H), a judgment "in any action brought under this section shall include costs and reasonable attorney fees for the prevailing party."  Laveen Meadows is the successful party on appeal and may recover its reasonable attorneys' fees and taxable costs upon compliance with ARCAP 21.

## CONCLUSION

¶24          We affirm the denial of the motion to set aside the default judgment.

C A T T A N I, J., dissenting:

¶25          I respectfully dissent.  In my view, under the express language of A.R.S. § 33-1807(A), a homeowners' association lien against a homeowner's residence for unpaid assessments may not be foreclosed unless the homeowner owes—as of the date of the foreclosure order—at least $1,200 (excluding related collection fees, attorney's fees, and charges for late payments) or the assessments (in any amount) are delinquent for a period of one year as of the date of the order.  Accordingly, because Mejia had fully paid the previously unpaid assessments (and owed only excludable fees and penalties) as of the date the lien on his property was foreclosed, I would hold that he was entitled to relief under Arizona Rule of Civil Procedure 60(b)(6) based on "extraordinary circumstances of hardship or injustice justifying relief."  *See Webb v. Erickson*, 134 Ariz. 182, 187 (1982).

¶26          Section 33-1807(A) authorizes homeowners' associations to foreclose on a residential lien to collect delinquent assessments, but only if the unpaid assessments, *excluding* penalties and fees incurred to collect those assessments, are delinquent for more than one year or total at least $1,200:

> The association has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due. The association's lien for assessments, for charges for late

payment of those assessments, for reasonable collection fees and for reasonable attorney fees and costs incurred with respect to those assessments may be foreclosed in the same manner as a mortgage on real estate **but may be foreclosed only if the owner has been delinquent in the payment of monies secured by the lien,** *excluding* **reasonable collection fees, reasonable attorney fees and charges for late payment of and costs incurred with respect to those assessments, for a period of one year or in the amount of $1,200 or more, whichever occurs first**.

(Emphases added.)

**¶27**        As the majority agrees, the issue before us is whether the phrase "may be foreclosed" in this subsection refers to the commencement of a civil action seeking judicial foreclosure or the issuance of a judgment of foreclosure. *See supra* ¶ 13. In my view, a lien is not "foreclosed" until a court issues an order to that effect. Accordingly, I disagree with the majority's conclusion that "may be foreclosed" means the commencement of foreclosure proceedings, and I would hold that the delinquency at issue must be determined as of the date of the foreclosure order.

**¶28**        From my perspective, under the express language of the statute, there are different components of a homeowners' association lien that are treated differently—the unpaid assessments are one component, while associated penalties, fees, and costs constitute a separate component. The statute only authorizes a foreclosure order if (1) the unpaid assessment component (in any amount) is delinquent for more than one year or (2) the unpaid assessment component is for $1,200 or more. A.R.S. § 33-1807(A). Once Mejia paid the full amount of the past-due assessments, there was neither an amount that was delinquent for more than one year nor $1,200 or more owing. Accordingly, there was no basis for ordering that the lien against Mejia's property be foreclosed.

**¶29**        The majority suggests that this interpretation is illogical given the statutory language stating that the lien "'may be foreclosed' once an owner is either delinquent for one year or for $1,200 in unpaid assessments, 'whichever occurs first.'" *Supra* ¶ 14 (quoting A.R.S. § 33-1807(A)). The majority asserts that the time element is rendered superfluous because "prior to entering judgment, the court would need to determine that the owner still owed at least $1,200 in unpaid assessments." *Id.* But the time element is not superfluous if an amount less than $1,200 remains delinquent for more than one year. If, for example, a homeowner owed $600 in unpaid

assessments and $2,000 in penalties, the homeowners' association could foreclose on its lien notwithstanding the $1,200 threshold amount so long as the $600 remained delinquent for more than one year. Accordingly, the one-year provision is still relevant if a homeowner owes some amount in assessments that remain delinquent for more than a year, even if that amount is less than $1,200.

¶30 The majority's interpretation is not only inconsistent with the express language of the statute, but its rationale arguably would permit a foreclosure order even if the homeowner paid the entire amount owed (assessments as well as related fees, penalties, and costs) after foreclosure proceedings commenced. In my view, it would be nonsensical to permit a lien to be foreclosed when the underlying debt has been completely satisfied, and the same logic applies to foreclosure of a lien that no longer includes any foreclosure-qualifying amount. Thus, I would hold that foreclosure is not permitted if the qualifying component of the lien has been satisfied before a foreclosure order issues.[3]

¶31 Although this is an issue of first impression in Arizona, in *Huntington Continental Townhouse Ass'n v. Miner*, 179 Cal. Rptr. 3d 47, 55–56 (Ct. App. 2014), a California appellate court held that under a similar statute, Cal. Civ. Code § 5720, a homeowners' association could not refuse a partial payment and proceed with foreclosure when the partial payment would reduce the amount of unpaid assessments below a statutory threshold. The majority here, *see supra* ¶ 15, attempts to distinguish *Huntington Continental* based on slightly different language in the California statute: an association "may not collect . . . through judicial or nonjudicial foreclosure" delinquent assessments totaling less than $1,800 (although the threshold amount does not apply if the assessments are more

---

[3] The majority correctly notes that the Legislature has added language to the end of the second sentence of § 33-1807(A) providing that the time period of a delinquency (one year) and the amount of delinquent assessments is to be "determined on the date the action is filed." *See supra* ¶ 16 n.2. I disagree, however, with the majority's conclusion that the amendment "further confirms the Legislature's intent that courts may grant foreclosure under § 33-1807(A) upon proof that the requisite delinquency existed when the action was filed, even if the owner reduces the amount of the delinquency while the case is pending." *Id.* Instead, the amendment may be viewed as further reflecting the Legislature's interest in limiting the circumstances under which a foreclosure action can be filed (and addressing the hypothetical concern cited by the majority, *supra* ¶ 14) by eliminating "anticipatory" foreclosure filings by homeowners' associations.

than 12 months delinquent). *See* Cal. Civ. Code § 5720(b), (c)(1). But I view the California statute's "*may not* collect . . . through judicial or nonjudicial foreclosure" assessments totaling *less than* $1,800 to have essentially the same meaning as Arizona's provision that the lien "*may* be foreclosed *only if* [the delinquent assessments total] $1,200 *or more*." A.R.S. § 33-1807(A) (emphasis added); Cal. Civ. Code § 5720(b) (emphasis added). And I agree with the California court's observation that such statutes reflect legislative intent to limit the circumstances under which a property owner's house may be taken based on delinquent homeowners' association fees to situations where the fees owed exceed a relatively de minimis amount (excluding penalties and interest), while still permitting homeowners' associations to pursue other remedies against the delinquent homeowner. *Huntington Cont'l*, 179 Cal. Rptr. 3d at 55–56. I also agree with the California court's comment that, although "[i]t is possible for a situation to arise in which a clever and unscrupulous owner would be able to dodge foreclosure" through partial payments, the homeowners' association retains access to remedies other than foreclosure, including financial judgments against the homeowner. *Id*. at 56.

¶32        In sum, although Laveen Meadows' suit to foreclose based on the assessment lien was properly filed, once Mejia tendered the $5,000 check to pay the delinquent assessments in full (and then some), the only monies then owed to Laveen Meadows and secured by the lien were for associated attorney's fees and costs. Accordingly, even though Laveen Meadows maintained the right to collect those fees, charges, late charges, penalties, and interest, the express provisions of A.R.S. § 33-1807(A) prohibited doing so by foreclosure. Thus, in the interest of justice, the superior court should have granted relief from judgment under Rule 60(b)(6).

